UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Children of the Court, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> Timothy C. Evans, *et al.*, <br><br> *Defendants.* | No. 24 CV 8785 <br><br> Judge Lindsay C. Jenkins |

**Memorandum Opinion and Order**

Plaintiffs, Children of the Court and Conor Paris, sued Defendant Abby Romanek, Cook County, and Iris Y. Martinez for violation of their First and Fourteenth Amendment Rights. [Dkt. 29.][1] The Court dismissed their complaint against Romanek with prejudice and against Cook County and Martinez without prejudice, giving Plaintiffs leave to amend. [Dkt. 23.] Plaintiffs amended, naming Cook County and Chief Judge Timothy Evans. [Dkt. 29.] Cook County moved to dismiss the amended complaint, and the Court granted their motion. [Dkt. 35.] Chief Judge Evans separately moved to dismiss [dkt. 39], and Plaintiffs filed a brief in opposition. [dkt. 41].

For the reasons explained, the motion is granted.

**Background**

Children of the Court is a non-profit corporation that works to reunite "adult children of divorce" with "the courtrooms and judges that often had an outsized impact on their youth."[2] [Dkt. 29 at 1.] Conor Paris is one of the organization's beneficiaries. [*Id.*] Children of the Court's mission is to advocate for administrative changes to judicial systems to prioritize the assignment of cases to judges with relevant personal experience in order to ensure that children's best interests are always considered. [*Id.* at ¶ 9.] Doing so, according to Children of the Court, will increase the esteem the public has for the judiciary. [*Id.* at ¶ 11.]

Children of the Court works with "adult beneficiaries" like Conor to facilitate visits to the courtrooms where crucial decisions were made that impacted their lives.

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[2] For Judge Evans's motion to dismiss, the Court accepts as true all well-pled allegations set forth in Plaintiffs' Amended Complaint [Dkt. 29] and draws all reasonable inferences in Plaintiffs' favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[*Id.* at ¶ 12.] In advance of these visits, Children of the Court sent letters to judges notifying them that an "adult beneficiary" would be visiting their courtroom and soliciting the judge to "offer appropriate advice for the visit." [*Id.* at ¶ 14.] While Judge Abby Romanek received one of these letters, neither she nor Timothy Evans, nor any of her other "superiors" responded. [*Id.* at ¶ 17.]

On August 5, 2024, Conor attempted to attend a public hearing via Zoom before Judge Romanek concerning his parents' post-dissolution case. [*Id.* at ¶ 2.] Although Conor's parents are now divorced, Judge Romanek presides over their post-decree proceedings. [*Id.* at ¶ 21.] Conor wished to observe the proceedings to gain a better understanding of Judge Romanek's decisions and observe the representation of his minor siblings by a *Guardian Ad Litem*. [*Id.* at 2, ¶ 24.]

When his parents' case was called, Judge Romanek refused to admit Conor into the Zoom hearing, remarking: "Conor Paris is here. He has no business being here and he shouldn't be here and I am not letting him in. He shouldn't know about court dates." [*Id.*] Conor was not admitted into the Zoom proceedings that day. [*Id.*] Edward Weinhaus, Executive Director and Founder of Children of the Court, who attended the August 5, 2024, hearing, heard Judge Romanek's remarks. [*Id.* at ¶ 29.]

On September 24, 2024, after Plaintiffs filed their original complaint, their attorney emailed Judge Romanek's chambers notifying her that Children of the Court and Conor would be attending proceedings in her courtroom the following day. [Dkt. 29, at ¶ 31.] The next day, Judge Romanek denied Weinhaus entry into the courtroom, preventing him from observing "an otherwise public hearing" for the benefit of Conor and other "Adult Beneficiaries." [*Id.* at ¶ 32.] The complaint does not allege whether Conor attempted to or was able to attend.

Plaintiffs contend that Judge Romanek's actions injured them in a variety of ways. [*Id.* at ¶ 33.] According to Plaintiffs this was Judge Romanek's "opening salvo in plans to limit accessibility to the … Domestic Relations Division;" and subsequently, a supervising judge "instituted a plan to terminate any virtual appearances." [*Id.* at ¶ 40, n.1.] Plaintiffs allege that Evans, the Chief Judge of the Circuit Court, was Romanek's supervisor and had the responsibility to ensure litigants and the public have access to the Court. [*Id.* at ¶ 42.] According to Plaintiffs, the fact that Conor was excluded from the Zoom hearing on August 5, 2024 and Weinhaus was denied entry on September 24, 2024 shows that Judge Evans failed to discharge his responsibilities. [*Id.* at ¶¶ 42–44]. While Plaintiffs' complaint includes only one count for violation of the Plaintiffs' First Amendment rights, included within it is an allegation that the same conduct violated 42 U.S.C. § 1983. [*Id.* at 10–11.]

Judge Evans moves to dismiss the amended complaint on several bases. First, he argues that the claims are barred by absolute judicial immunity, including for supervisory tasks; and second, he argues that Plaintiffs failed to state a claim against

2

him because their complaint includes no allegations of his personal involvement. [Dkt. 39.][3]

## Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

## Analysis

Before reaching Judge Evans's arguments in favor of dismissal, the Court addresses the antecedent issue: Plaintiffs' right of access claim.

To determine whether the right of access exists, courts apply the *Press–Enterprise Co. v. Superior Court* two-part test. 478 U.S. 1 (1986). The first inquiry is "whether the place and process have historically been open to the press and general public." *Id.* at 8. The second is whether "the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

The Seventh Circuit applied the test in *Courthouse News Service v. Brown*, a case where a news service challenged Cook County Court's policy of administratively processing newly filed complaints before making them publicly available. 908 F.3d 1063, 1065 (7th Cir. 2018). Plaintiffs were allegedly injured because the delay caused by processing impacted their ability to timely summarize and publicize "newsworthy new civil complaints." *Id.* at 1066. The parties agreed there was a qualified right of access to civil complaints but disagreed over whether the right attached the moment a complaint was filed or after processing. *Id.* at 1070. Applying a modified *Younger* abstention theory, the Seventh Circuit explained that it was "not appropriate for the federal courts" to "supervis[e] … state court operations." *Id.* at 1074. Principles of cooperation and comity weighed in favor of abstention so that state courts could "craft an informed and proper balance between the state courts' legitimate institutional needs and the public's … substantial First Amendment interest." *Id.*

In this case, neither party proposes how to apply the *Press–Enterprise* factors nor addresses why the *Younger* abstention doctrine would counsel a different outcome here than it did in *Courthouse News*. This is particularly salient given that Plaintiffs suggest their alleged injury due to a general movement by the Cook County Domestic

---

[3] Evans's motion also argues that Children of the Court lacks standing. [Dkt. 39 at 4.] The Court does not find that argument persuasive and resolves this motion on other grounds.

3

Relations division away from permitting appearances via Zoom. Much like the Seventh Circuit's disinclination to meddle in Cook County's efforts to transition from paper to electronic filing in *Courthouse News*, so too here: the Court is wary to extend any right of access to Zoom appearances by nonparties in Domestic Relations cases. Plaintiffs' complaint also indicates that they are looking for more than access to courtrooms; they want judges within the Domestic Relations division to work with them, supporting their efforts with respect to educating and rehabilitating "adult children of divorce." While the "Supreme Court has … cautioned against any narrow, literal conception of the First Amendment's terms," the Court finds no basis to extend it to constitutionally mandate a relationship between state court judges and legal organizations. *Id.* at 1069. These considerations counsel in favor of the Court abstaining from exercising jurisdiction over this case and dismissing the action without prejudice. *Id.* at 1075.

Putting these issues to the side, even if Plaintiffs had a meritorious access-to-courts claim, they failed to state a claim against Judge Evans for two reasons.

First, Judge Evans has absolute judicial immunity for actions taken within the scope of his employment. *Jackson v. Evans*, 2024 WL 4252798, at *5 (N.D. Ill. Sept. 20, 2024); *Stagman v. Evans*, 2017 WL 1105491, at *3 (N.D. Ill. Mar. 24, 2017). That includes Judge Evans's role as a supervisor of other judges. Immunity falls away only where a judge acts in "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiffs' arguments that Judge Evans was acting in a supervisory and therefore administrative capacity are inapposite. The case they cite, *Forrester v. White*, establishes only that judicial immunity does not extend to administrative decisions. 484 U.S. 219, 228 (1988). They cite no case for the antecedent principle: that supervising is administrative. They ask the Court to infer that controlling who is permitted into a courtroom is administrative because it could just as easily be done by a clerk. [Dkt. 41 at 5.] True, some actions taken by clerks are not covered by quasi-judicial immunity. For example, the Seventh Circuit found immunity did not cover a clerk's refusal to file a divorce pleading "in absence of explicit judicial direction." *Snyder v. Nolen*, 380 F.3d 279, 287 (7th Cir. 2004). But judges have "wide latitude to control [the] courtroom atmosphere." *United States v. Mannie*, 509 F.3d 851, 857 (7th Cir. 2007). Accepting a filing is not akin to determining who should be permitted into a courtroom. The latter is an act that requires the use of judgment and discretion. *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005) (outlining factors to consider when applying judicial immunity). This is especially true where Plaintiffs admit that Judge Romanek presides over any post-dissolution matters that arise in conjunction with Conor's parents' divorce, indicating that she is familiar with the parties and issues due to repeated contact. [Dkt. 29 at ¶ 21.]

As Judge Evans argues, numerous courts agree that judicial immunity extends to supervisory tasks. *Brown v. Maine*, 2012 WL 5463087, at *5 (D. Me. Nov. 7, 2012), *aff'd* (May 8, 2013). These courts theorize, persuasively, that holding supervising

4

judges liable for the actions of judges under their supervision would be "an end-run around [judicial] immunity." *Higdon v. Tusan*, 2017 WL 552779, at *5 (N.D. Ga. Feb. 10, 2017), *aff'd sub nom. Higdon v. Fulton Cnty., Georgia*, 746 F. App'x 796 (11th Cir. 2018), and *aff'd*, 746 F. App'x 805 (11th Cir. 2018). Plaintiffs offer no basis to believe that Judge Evans was acting administratively when overseeing Judge Romanek.

This argument dovetails with the second issue: Plaintiffs have failed to state a claim against Judge Evans for Rule 8(a) purposes. They do not explain what actions he took or failed to take with respect to Judge Romanek's decision or even allege that he was aware of Judge Romanek's decision. They do not cite sufficient facts to plausibly believe that Judge Evans acted in an administrative manner with respect to his supervision of Judge Romanek. They don't explain the extent of his supervision at all.

Rather, Plaintiffs seem to press a *respondeat superior* theory. They argue that Judge Romanek violated the First Amendment, and, because Judge Evans was her supervisor, he must be liable for permitting her to do so. But "[t]here is no such thing as *respondeat superior* liability for government officials under § 1983." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021); *Stagman*, 2017 WL 1105491, at *3. "A government official is only liable for his or her own misconduct." *Taylor*, 999 F.3d at 493.

In order to state a claim, Plaintiffs would have to allege facts demonstrating Evans's personal involvement in Romanek's decision. *Id.* at 494. Judge Evans would need to have "know[n] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye" to it. *Id.* Plaintiffs' allegations fall far short. They allege no conduct by Judge Evans at all with respect to Judge Romanek's decisions. As explained, they do not even allege that Judge Evans was aware of those decisions.

## Conclusion

While the Court is skeptical of Plaintiffs' ability to state a claim against Judge Evans consistent with their Rule 11 obligations, given the Seventh Circuit's guidance, it permits them one final opportunity to amend. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015). The Court emphasizes, however, that if Plaintiffs cannot in good faith allege facts supporting Judge Evans's personal involvement in Judge Romanek's decisions, going beyond a *respondeat superior* theory of liability, then the action will be dismissed with prejudice.

Enter: 24 CV 8785
Date: May 2, 2025

_____
Lindsay C. Jenkins

5